# UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| ELLEN ABDUR-RAHIM, *et al.,* | ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No.: 2:17-cv-00601 |
| v. | ) ) | Judge: Edmund Sargus |
| THE CITY OF COLUMBUS, *et al.,* | ) ) ) | Magistrate Judge: Chelsey Vascura |
| Defendants. | ) | |

## OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## INTRODUCTION

Over the past few years, Columbus (like many places across the country) has seen increased civic participation, including peaceful political protests in its public streets and sidewalks. The Columbus Police Department has responded by suppressing protest speech with excessive use of force, even including attacks on helpless and peaceful individuals. In particular, the Department has a pattern and practice of deploying pepper spray against incapacitated, restrained, and submissive protestors at these events. This pattern of unconstitutional use of force, which chills political speech, was at work when Defendant-Officers Masters and Thiel attacked Plaintiffs Ellen Abdur-Rahim, Harrison Kallner, and others during the January 30, 2017 Demonstration that is the subject of this litigation. This pattern was already established, and still remains in effect, at major political demonstrations in Columbus.

Plaintiffs' Motion for Partial Summary Judgment demonstrates that as a matter of law and  uncontroverted fact, Defendant-Officers Masters and Thiel unconstitutionally attacked Plaintiffs when they pepper-sprayed them in the face at point-blank range, after they had already

been completely disabled by pepper spray, and as they in fact were dispersing, as the police had ordered, from the nonviolent Demonstration. At trial, Plaintiffs will prove that these officers did so in retaliation against Plaintiffs' protected speech; that the commanding Lieutenant, Defendant Lipp, knowingly participated; and that this conduct was motivated by a culture, pattern, and practice of unconstitutional abuse that pervades the Police Department.

These latter claims – Plaintiffs' First Amendment, supervisory liability, and pattern and practice claims – are not yet ripe for disposition, however. Genuine issues of material fact exist as to these claims. Because Defendants have not met their burden to establish that the material facts are undisputed, Defendants' Motion for Summary Judgment fails.

## LAW AND ARGUMENT

Summary judgment is only appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The moving party bears the initial burden of showing the absence of any genuine issue of material fact." *Ohio A. Philip Randolph Inst. v. Householder,* 367 F. Supp. 3d 697, 704 (S.D. Ohio 2019) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "If, after reviewing the record as a whole, 'a rational trier of fact [could] find for the non-moving party,' then there is a genuine issue for trial." *Id.* (internal citations omitted).

To decide a summary judgment motion, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [their] favor." *Kizner v. Schuckmann,* 850 F.Supp. 785, 790 (S.D. Ohio 2012) (internal citations omitted) (denying summary judgment for a defendant police officer). Moreover, "[w]hen evaluating the defense of qualified immunity on a motion for summary judgment, the court *must* adopt the plaintiff's version of the facts." *Campbell v. City of Springboro, Ohio,* 700 F.3d 779, 786 (6th Cir. 2012) (same) (emphasis added).

2

As to the parties' cross-motions on Plaintiffs' Fourth Amendment claims and Ohio state law claims against Defendants Masters and Thiel, there is no material fact in dispute, and *Plaintiffs* are entitled to judgment as a matter of law. As to the rest of Defendants' Motion, the Plaintiffs have amply supported each of their claims, but the parties continue to dispute key facts, so Plaintiffs must be permitted to prove these claims at trial.

## I. Fourth Amendment and State Law Claims Against the Individual Officer Defendants: No Fact Issue Exists, Defendants are Not Entitled to Qualified Immunity, and Plaintiffs are Entitled to Summary Judgment

Defendant-Officers Justin Masters and John Thiel violated clearly established law and acted with malice when they targeted and attacked the incapacitated Plaintiffs with pepper spray at close range. As to these claims, no material fact is in dispute. Plaintiffs incorporate by reference the Statement of Facts and the evidence discussed in their Motion for Partial Summary Judgment, ECF No. 64. Based on these undisputed facts, Plaintiffs are entitled to judgment as a matter of law and Defendants are not entitled to qualified immunity or state statutory immunity.

### A. The Undisputed Facts Demonstrate that Defendants Masters and Thiel Used Unconstitutional Force against Plaintiffs

Plaintiffs and Defendants agree on every fact material to Plaintiffs' Fourth Amendment claims against the individual officers, and on the legal standard (*Graham*) that applies. ECF No. 63, PAGEID# 369-372 (Defendants' Motion for Summary Judgment); ECF No. 64, PAGEID# 609. Defendants' quarrel is with the legal question: whether Officers Masters and Thiel's pepper spray attacks against the Plaintiffs were objectively reasonable given the totality of the circumstances. *Graham v. Connor*, 490 U.S. 386, 397 (1989). They were not.

It is undisputed that Officers Masters and Thiel intentionally targeted Ellen Abdur-Rahim and Harrison Kallner on the night of the Demonstration and pepper sprayed them at close range in

the face and eyes. *See* Masters Dep.[1] 185:11-188:11; ECF No. 63, PAGEID# 361-2; Thiel Dep. 83:16-84:22; ECF No. 63, PAGEID# 356-7. It is undisputed that the Demonstration, including the Plaintiffs' behavior, was "peaceful" at all times. *See* Masters Dep. 124:16-125:3 ("There was no violence or anything") and 157:14-24 ("Yeah, it was peaceful. There was no violence."); ECF No. 63, PAGEID# 360 ("There were no injuries (other than exposure to mace) reported"). It is undisputed that Plaintiffs were not resisting arrest or fleeing, but were already disabled by pepper spray and dispersing when the Officers attacked them. ECF No. 63, PAGEID# 367-8.

After the Police deployed their initial burst of pepper spray over the protestors, blinding and injuring them, Defendants characterize Ellen and Harrison as "lingering" in the street when Masters and Thiel came after them again. ECF No. 63, PAGEID# 357, 372. Ellen, Defendants say, "had her mouth and nose covered with her hijab and was crouched over to cover her face," when Officer Masters came to grab and pepper-spray her, and "she did not make haste to get out of the street." *Id.* Harrison, Defendants say, "jump[ed] off the trash can on the corner and walk[ed] northeast" away from the police when he "received" the close-range pepper spray from Officer Thiel. *Id.*, PAGEID# 355-6. After the police sprayed the group and Defendants moved to make their attack, Harrison was already in pain, "upset and confused," and "trying to get out of there." Kallner Dep. 44:2-46:9. Ellen "already could feel…the pepper spray coming down," and "felt faint" as she was trying to "get away." Abdur-Rahim Dep. 74:6-76:17. Incontrovertible evidence demonstrates that Plaintiffs were disabled and dispersing, and that they could not "make haste." Plaintiffs were nonviolent, not being arrested, already incapacitated from police pepper spray, and outsized and outnumbered by the armed officers; Defendants' attack against them was objectively

---

[1] To the extent possible, Plaintiffs cite to exhibits already filed with Plaintiffs' Motion for Partial Summary Judgment, ECF No. 64, and use the same abbreviated citations as in Plaintiffs' Motion. Where there are new exhibits filed with this Opposition, their numbering picks up where the previous left off, and Plaintiffs indicate that.

unreasonable.[2] *See Cabaniss v. City of Riverside,* 231 F. App'x. 407, 413 (6th Cir. 2007).

Defendants rely on out-of-circuit cases that either do not involve pepper spray at all, or involve force against noncompliant individuals. *Brown* and *Crowell,* Second Circuit cases, treat police use of mace and tasers where the victim of force was physically resisting an arrest. ECF No. 63 PAGEID# 371; *Brown v. City of New York*, 862 F.3d 182, 189-90 (2d Cir. 2017); *Crowell v. Kirkpatrick* 400 F.App'x. 592, 595-6 (2d Cir. 2010). *Felarca,* a Ninth Circuit case, involved the "minimal," non-injurious use of billy club jabs to break up a human chain blocking a large, day-long tent encampment at UC Berkeley. ECF No. 63 PAGEID# 370; 891 F.3d 809, 818-19 (9th Cir. 2018). In that case, the campers "substantially outnumbered" the police, and were engaging in "physical altercations" when police "jabbed" and "pushed" them "incidental[ly] to moving and tousling with the crowd." *Id* at 817. Pepper spray, a much more intrusive level of force, was not used there, so the *Felarca* court expressly *distinguished* two cases that did hold pepper spray to be a Fourth Amendment violation. *See Young v. County of Los Angeles*, 655 F.3d 1156 (9th Cir. 2011) and *Headwaters Forest Defense v. County of Humboldt*, 276 F.3d 1125 (9th Cir. 2002).

Defendants cite only one case, from the Fifth Circuit, that involves the use of pepper spray against a nonviolent political demonstrator: *Singleton v. Darby,* 609 F. App'x. 190, 195 (5th Cir. 2015). *Singleton* arose from peaceful protests against the Keystone XL oil pipeline. The protestor-victim of force, Ms. Singleton, obstructed traffic to stop a police vehicle from trampling a young protestor laying in the road. After a fellow protestor tried to jump on the vehicle, the officer exited his car and pepper sprayed Ms. Singleton. There, the officer was one of only two policemen at the

---

[2] Defendants repeatedly characterize the Officers' pepper spray attacks as "short" or "momentary." *E.g.,* ECF No. 63, PAGEID# 356, 358, 359. Whether or not this characterization is credible, Defendants do not dispute the serious suffering it caused the Plaintiffs. *E.g.* Abdur-Rahim Dep. 94:24-96:13. Moreover, any use of force, even a "momentary" one, violates the Fourth Amendment when it is excessive. *E.g. Gaddis ex rel. Gaddis v. Redford Twp.,* 364 F.3d 763, 772 (6th Cir. 2004).

entire demonstration, was "vastly outnumbered" by the group, and asserted he was responding to an immediate, closely-proximate threat. *Id.* First, *Singleton* was wrongly decided. *See* 609 F. App'x. at 196 (Dennis, J. dissenting). Second, it is not the law of this Circuit. Third, the facts of that case are a far cry from the situation here, where a force of more than 200 armed, riot-gear clad police, with dozens of cars, bicycles, and SUVs, faced down a diminishing group of peaceful protestors on foot. Ex. 1 to ECF No. 64 (Lt. Lipp's Incident Report). Here, the Defendant Officers followed Plaintiffs *after* they were already incapacitated by pepper spray, and abused them further. At no time have Defendants offered evidence that Plaintiffs presented any threat.

      B.     *Defendants are Not Entitled to Qualified Immunity*

In this Circuit's most recent treatment of the qualified immunity defense for an officer who pepper-sprayed a nonviolent non-arrestee, the Court restated that qualified immunity fails if the defendant violates "clearly established…constitutional rights of which a reasonable person would have known," and that "it defeats the purpose of § 1983 to define the right too narrowly." *Saunders v. Cuyahoga Metro. Housing Authority,* 769 F. App'x 214, 219 (6th Cir. 2019) (internal citations omitted) (defendant-officer who pepper sprayed already-subdued non-arrestee was not entitled to qualified immunity). This Court has repeatedly—and specifically—held that police use of pepper spray against a compliant, nonviolent individual is unconstitutional excessive force. *Adams v. Metiva,* 31 F.3d 375, 385 (6th Cir. 1994); *Atkins v. Township of Flint,* 94 F. App'x. 342, 349 (6th Cir. 2004); *Grawey v. Drury,* 567 F.3d 302, 311 (6th Cir. 2009). Courts in this Circuit have relied on this trilogy of precedent for years to support the clearly established rule that police pepper spraying a nonviolent, nonresistant person who is not under arrest violates the Fourth Amendment. *See White v. Greene County Sheriff's Dept.* No. 2:09-cv-211, 2014 WL 3058393 at *5 (E.D. Tenn. Jul. 2, 2014) (collecting cases); *see also Saunders,* 769 F. App'x at 221-2. This long-established

6

rule makes it more than "sufficiently clear that a reasonable official would understand [when] what he is doing violates that right." *Estate of Hill v. Miracle,* 853 F.3d 306, 316 (6th Cir. 2017); ECF No. 63, PAGEID#362. The right is both obvious enough and established enough that any officer is on notice—and Defendants do not make any contention to the contrary.[3]

C.    *Defendants are Not Entitled to Ohio Statutory Immunity*

As with Fourth Amendment qualified immunity, Defendants cite no relevant facts or law at all to establish state law immunity. ECF No. 63, PAGEID# 374-375. Plaintiffs agree that the appropriate state law immunity question arises under R.C. 2744.03(A)(6)(b): Defendants Masters and Thiel did not just assault the Plaintiffs—they did so maliciously and in bad faith.

The Sixth Circuit interprets Ohio assault and battery law to establish liability where "[a]n officer uses more force than is necessary to make an arrest and protect himself from injury." *Folks v. Petitt,* 676 F.App'x. 567, 572 (6th Cir. 2017) (citing *D'Agastino v. City of Warren*, 75 Fed. App'x. 990, 995 (6th Cir. 2003)) (internal quotations omitted). This Circuit has held that evidence of "gratuitous" force under the Fourth Amendment can demonstrate malice or bad faith for the Ohio immunity statute. *Id.* (citing *Baker v. City of Hamilton*, 471 F.3d 601, 610 (6th Cir. 2006)). In *Folks,* the Court found that even police hand force against a "compliant, non-resisting" person was "gratuitous," and could be malicious or in bad faith, and so refused to extend state law immunity. *Id.* Here, as discussed above, Defendants Masters and Thiel's uses of force were not necessary, but punitive—the Plaintiffs were already injured, and complying with police orders. The extreme physical intrusion of point-blank mace was more than "gratuitous" enough to overcome the state's immunity doctrine, written to protect reasonable actors within their duties.

---

[3] Defendants cite one case, *Felarca v. Birgeneau,* 891 F.3d 809, 822-23 (9th Cir. 2018), for the proposition that the Officers here were not on notice of their wrongdoing. ECF No. 63, PAGEID# 373. Even if one single case from the Ninth Circuit could create qualified immunity law in the Sixth, *Felarca* is factually distinguishable. *See supra.*

## II. First Amendment Claims Against the Individual Officer Defendants: Defendants are Not Entitled to Qualified Immunity and All Facts Material to the Causation Element are Disputed

Defendant Officers Masters and Thiel also violated clearly established law and acted with malice when they pepper-sprayed the Plaintiffs in direct response to their protected First Amendment speech. As shown below, when the Officers attacked Plaintiffs, they and their colleagues had specifically identified each Plaintiff ahead of time and had targeted them for abuse. Each officer followed and pepper sprayed the corresponding Plaintiff because of their protected speech. And afterwards the officers *celebrated* the punishment they had inflicted

The freedom to criticize public officials without fear of retaliation has been "the central meaning" of the First Amendment "[s]ince the day the ink dried on the Bill of Rights." *McCurdy v. Montgomery County, Ohio*, 240 F.3d 512, 520 (6th Cir. 2001). Public officials, "and police officers in particular, may not exercise their authority for personal motives, particularly in response to real or perceived slights to their dignity." *Leonard v. Robinson*, 477 F.3d 347, 355 (6th Cir. 2007) (quoting *Bloch v. Ribar*, 156 F.3d 673, 682 (6th Cir. 1998)). This means the police must not commit any adverse action, let alone physical attacks, out of a desire to punish or deter speech. *See Thaddeus-X v. Butler*, 175 F.3d 378, 388 (6th Cir. 1999). The claim has three elements:

> (1) The plaintiff engaged in protected conduct; (2) An adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) There is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Kennedy v. City of Villa Hills, Ky.*, 635 F.3d 210, 217 (6th Cir. 2011). When a plaintiff satisfies these elements, the burden shifts to the defendant to show that "it would have taken the same action in the absence of the protected activity." *Center for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 821 (6th Cir. 2007) (quoting *Arnett v. Myers*, 281 F.3d 552, 560-61 (6th Cir. 2002)).

Here, it is not seriously disputed that Plaintiffs engaged in protected speech. The material fact dispute surrounds the motive element: Defendants claim these officers would have targeted, followed, and directly pepper sprayed the dispersing Plaintiffs regardless of their speech. [4] ECF No. 63, PAGEID# 367. The record—including video evidence—demonstrates otherwise.

*A.    Officers Masters and Thiel Attacked Plaintiffs in Response to Protected Speech*

Immediately prior to when the Defendant Officers attacked Ellen and Harrison, both of them were engaged First Amendment-protected protest speech for much or all of the evening. *E.g.,* Abdur-Rahim Dep. 54:14-60:4; Kallner Dep. 21:2-22:4, 28:4-19; ECF No. 63 PAGEID# 346. Plaintiffs were gathered that night for the purpose of expressing their political views in the public square—an act that demands the highest First Amendment protection. *E.g. Texas v. Johnson*, 491 U.S. 397, 408–09 (1989). Ellen, who was standing in the front and center of the group of demonstrators for most of the evening, engaged in specific expression in addition to her attendance at the protest. She led the group, discussing race relations and police brutality, praying and chanting. Abdur-Rahim Dep. 53:18-60:04; ECF No. 63 PAGEID# 346, 357. Moments before she was attacked, she stepped up to the police officers, including Defendant Masters, and warned them that there were "high school kids" among the group they were about to pepper spray. Abdur-Rahim Dep. 65:8-20; Video Exhibit 7 at 0:0-15 ("Vid. Ex. 7"). Harrison, who was standing on the sidewalk or a trashcan on a sidewalk at all times, held a sign that said "RESIST / I will not be

---

[4] Courts recognize that the causation element "rarely will be supported by direct evidence." *Bloch,* 156 F.3d at 682, and that plaintiffs should therefore identify circumstantial evidence "indicating that the protected conduct was a substantial or motivating factor behind the adverse action." *Eckerman v. Tenn. Dept. of Safety*, 636 F.3d 202, 208 (6th Cir. 2010). Probative circumstantial evidence has included "the timing of events." *Arnett v. Myers*, 281 F.3d 552, 560-61 (6th Cir. 2002); see also *Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004) ("[T]emporal proximity alone may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.") (internal citations omitted). For example, in *Kennedy*, the timing of a retaliatory arrest created an inference of improper motive where the defendant officer arrested the plaintiff *immediately* after the plaintiff called the officer a "fat pig." *Kennedy*, 635 F.3d at 219. Where circumstantial evidence is enough for a reasonable factfinder to infer improper motive, summary judgment in favor of defendant officers is inappropriate. *See Bloch*, 156 F.3d at 682.

represented by fascism, bigotry, and white supremacy." Kallner Dep. 22:15-23:3; ECF No. 63, PAGEID# 351. He sang, chanted, and took photographs. *Id.* And immediately before Defendant Thiel attacked him personally, he opened his palms and asked the question, "why are you fucking spraying us?" Kallner Dep. 44:6-22; ECF No. 63 PAGEID# 355; Vid. Ex. 3 to ECF No. 64 at 0:05

When evaluating a First Amendment retaliation claim, whether a plaintiff *also* engaged in unprotected conduct *at some point* does not defeat the protected speech prong if plaintiffs' activity was protected prior to or following that conduct. *Barnes v. Wright*, 449 F.3d 709, 717 (6th Cir. 2006). In *Barnes*, the plaintiff criticized police officers, pulled out a gun, put the gun away, and then criticized the officers again. The court held that his speech "*prior* to the gun incident" as well as after was protected speech sufficient to color his retaliation claim. *Barnes*, 449 F.3d at 717-18. The relevant inquiry is whether, in light of all of the evidence, the police use of force was made "at least in part" in response to protected speech. *See Singleton,* 609 F.App'x. at 208-9 (Dennis, J. dissenting) (a plaintiff may suffer unconstitutional retaliation motivated by speech activities that occurred long prior to the challenged retaliatory conduct… In other words, a valid retaliation claim does not require that the plaintiff be actively engaged in constitutionally protected speech *at the very moment* a government agent engages in retaliatory conduct.) It cannot be seriously disputed here that Plaintiffs, political demonstrators, were engaged in protected speech.

B.    *Officers Masters and Thiel Acted with Retaliatory Motive*

Defendants' key fact dispute with Plaintiffs' First Amendment claim is over whether Officers Masters and Thiel acted with retaliatory motive when they targeted and attacked Ellen and Harrison. The record shows that they did, but Defendants create an issue of material fact.

Ellen could be seen and heard clearly during most of the Demonstration—she was a leader, and Defendant Masters both recognized her, and could hear her explicitly criticizing the police.

Masters Dep. 174:11-23 ("Q. Do you remember anything else about her now? A. Like I said, she was loud"); Abdur-Rahim Dep. 65:8-20; Vid. Ex. 7 at 0:0-15. She had also asked the officers not to spray the group because it contained "high school kids." *Id.* In response, Officer Masters targeted her, followed her, grabbed her, and sprayed her in the face. Later, as Ellen tried to seek help, the police mocked her. Abdur-Rahim Dep. 77:3-23 ("And so my face is covered with pepper spray. And it's like running down my face…And the police are in the street…And they start mocking me…they are laughing at me that I am in pain.") They laughed and remarked to each other that they "wanted that chick to get it, and she got it," and "she got it good." Vid. Ex. 8 at 0:05. "That real bitchy chick, she got it good," they said, "*oh* yeah." *Id* at 0:30. As explained *infra,* this retaliation and celebration was the *esprit de corps,* emblematic of the police culture and pattern that motivated Masters' behavior. As a result of this, Ellen experienced serious trauma related to police interactions that inhibited her future political action. *See* Abdur-Rahim Dep. 94:24-95:11.

Harrison, similarly, could be seen with his protest sign on the sidewalk trashcan during most of the Demonstration—Defendant Thiel recognized him. *E.g.,* Thiel Dep. 137:18-24. After the police discharged their pepper spray against the group the first time, Harrison jumped down from his vantage point and dispersed in the only direction he could. Kallner Dep. 44:2-22. Confused and scared, he turned to Defendant Thiel and asked "why are you fucking spraying us?" *Id.*; ECF No. 63, PAGEID# 355. In direct response, Thiel shot Harrison in the face point-blank with pepper spray, and Harrison immediately collapsed. Vid. Ex. 3 to ECF No. 64. As a result of this, Harrison is too afraid to attend political protests any more *at all.* Kallner Dep. 59:16-60:01, 62:5-12, and 73:23-75:20. Both Plaintiffs have made out their retaliation claims, but Defendants, relying on police testimony alone and ignoring all other evidence, dispute the facts central to the motive element. ECF No. 63, PAGEID# 367-8. *See Kiznerm* 850 F. Supp. at

11

790 (at summary judgment, the Court must accept the non-movant's facts); *see also Reich v. City of Elizabethtown*, No. 3:16-CV-00429-RGJ, 2018 WL 6028719, at *5 (W.D. Ky. Nov. 16, 2018) (officers' "self-serving" statements "will not defeat a motion for summary judgment.").

C.    *Defendants Are Not Entitled to Qualified Immunity*

Because there is a genuine issue of material fact as to Plaintiffs' First Amendment claims, Defendants also cannot be entitled to qualified immunity at summary judgment.[5] Supreme Court and Sixth Circuit precedent clearly establishes the right to criticize public officials, and that *any* police retaliation in response to First Amendment speech violates §1983. *See Barrett*, 130 F.3d at 264. In the policing context, the Sixth Circuit has applied this right in a number of ways, including the right "to be free from retaliation[] after insulting an officer," *Kennedy*, 635 F.3d at 219; "to challenge verbally [an officer's] surveillance," *McCurdy*, 240 F.3d at 520; to "question[] of police officers," *Patrizi v. Huff*, 690 F.3d 459, 467 (6th Cir. 2012); and more broadly, the right not to be detained by police "*because of* [] speech." *Center for Bio-Ethical Reform*, 477 F.3d at 824 (emphasis original). At minimum, when there is an issue of fact as to an officer's motive, "retaliatory intent proves dispositive of Defendants' claim to qualified immunity, [and] summary judgment [on these grounds is] inappropriate." *Center for Bio Ethical Reform*, 477 F.3d at 825.

"The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." *City of Houston v. Hill*, 482 U.S. 451, 461-63 (1987). On the undisputed facts, Plaintiffs have proved the first two elements of their retaliation claim, and Defendants themselves

---

[5] It is unclear whether Defendants assert qualified immunity as to Plaintiffs' First Amendment claims. Defendants' brief generally "assert[s] the defense of qualified immunity," ECF No. 63, PAGEID# 362 but specifically raises it as to only Plaintiffs' Fourth Amendment claims. PAGEID# 372. Therefore out of an abundance of caution Plaintiffs rebut any possible assertion of First Amendment qualified immunity.

present a major fact dispute surrounding causation. Defendants thus are not entitled to summary judgment on these claims and Plaintiffs will prevail at trial.

### III. First and Fourth Amendment Claims Against Defendant Lieutenant Lipp: If Defendant Lipp is Moving for Summary Judgment, All Facts Material to His Liability Are Disputed and He is Not Entitled to Any Immunity

When Officers Masters and Thiel went after the Plaintiffs, and when they and their colleagues celebrated the pain they caused, Defendant Lieutenant Lipp fully enabled and endorsed their unconstitutional behavior. Defendant Lipp planned for the use of pepper spray and provided the spray canisters to the officers. Then, not only did he stand by within a few feet of the officers' attacks against the Plaintiffs—audible and visible in the same video footage—he later personally reviewed the officers' actions and rather than disciplining them, encouraged the use of *even more* force next time around. Ex. 1 to ECF No. 64. For these reasons he is liable for their actions in his supervisory capacity.[6] Because as demonstrated above Plaintiffs' First and Fourth Amendment rights were clearly established, Defendant Lipp is not entitled to immunity.

A supervising officer is liable for the actions of inferior officers when "the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016). In other words, if the supervising officer "implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers," he is liable under §1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999); *see also Doe v. City of Roseville*, 296 F.3d 431, 440 (6th Cir. 2002). Here, Defendant Lipp inarguably supervised the entire event. ECF No. 63, PAGEID# 345.

---

[6] Defendants appear not to be actually moving for summary judgment on Plaintiffs' claims against Lieutenant Lipp. Instead, they merely assert several times generally that "respondeat superior liability is inapplicable in §1983 actions" ECF No. 63, PAGEID# 376 and PAGEID# 361, and they also discuss qualified immunity generally, PAGEID# 362. In any event, the foregoing evidence demonstrates that at minimum, there is a fact dispute precluding summary judgment on these claims.

He planned for the use of pepper spray in advance, and equipped officers including Defendants with high-grade canisters of the spray. Ex. 2 to ECF No. 64 (Lt. Lipp's Action Plan); ECF No. 63, PAGEID# 353. He ordered Officers Masters and Thiel, along with other officers, to pepper spray the Plaintiffs, incapacitating them. *See* ECF No. 63 at PAGEID# 355. He then stood by as the Defendant officers and other officers carried out their plan to follow and further attack the Plaintiffs and others. *Id.* After the event, he personally reviewed, approved, and encouraged future repetition of that conduct. Ex. 1 to ECF No. 64; *see* Exhibit 6 (report indicating Lt. Lipp reviewed and approved all uses of pepper spray at the Demonstration). Based on the First and Fourth Amendment precedent discussed *supra,* Defendant Lipp was on notice that this enabling and ratification of the inferior Officer Defendants' acts violated clearly established law.

## IV. First and Fourth Amendment *Monell* Claims Against the City: *Every* Material Fact Is In Dispute and Defendants Do Not Claim Otherwise

Plaintiffs have adduced ample evidence to support findings in their favor on their First and Fourth Amendment claims against Defendants Masters, Thiel, and Lipp. These underlying constitutional violations also stem from a pattern, practice, and custom of unconstitutional conduct that pervades the Department, conferring *Monell* liability on the Department and City as well.

A plaintiff may prove *Monell* liability in a variety of ways, including by alleging: (1) the existence of an illegal official policy or legislative enactment, (2) that an official with final decision-making authority ratified illegal actions, (3) the existence of a policy of inadequate training or supervision, or (4) the existence of a custom of tolerance of or acquiescence to federal rights violations. *See Stillwagon v. City of Delaware*, 274 F. Supp. 3d 714, 771 (S.D. Ohio 2017), *aff'd in part, appeal dismissed in part sub nom,* 747 F. App'x 361 (6th Cir. 2018). These approaches boil down to one showing: that a larger structure promoting unconstitutional behavior is the "moving force" behind the individual violations, such that liability attaches to the entire

14

Department. *See id.* Here, Plaintiffs have presented evidence to prove multiple independent theories of *Monell* liability, including the ratification and custom theories, each of which ultimately makes the same case: the Columbus Police Department is pervaded by a culture of tolerance, encouragement, and even celebration of abuse and has a practice of using unconstitutional force directly against nonviolent individuals in punishment for their speech at political demonstrations.

Specifically, the Police Department comes to political demonstrations equipped with riot gear, pepper spray, a sound cannon, and other high-grade weaponry, along with specific plans to use it against nonviolent demonstrators. The Department's officers habitually pepper spray already-incapacitated peaceful demonstrators gratuitously, at close range—even in the face. They do so in response to their political speech. They then celebrate this violence and mock the victim. They know this is unconstitutional, and sometimes attempt to cover it up. Department leadership, all the way up the chain of command, not only knows about, but endorses this, including by approving every reported or investigated use of force and recommending its repetition in the future.

In asking this Court to grant summary judgment against Plaintiffs' *Monell* claims, Defendants present several conclusory pages of argument, but zero record evidence. ECF No. 63, PAGEID# 377-78. Nor do Defendants address any fact that is material to these claims. *Id.* Defendants do aver that the Department maintains written policies as to use of pepper spray generally, and the First Amendment generally, and that officers are trained on this; Plaintiffs agree. *Id.* at PAGEID# 377; *see* Ex 2 to ECF No. 64 at 2 (Example of "Action Plan" that Defendants prepare for peaceful demonstrations, specifying pepper spray will be used). The parties also agree that the Defendant-Officers faced no discipline after they attacked Plaintiffs with pepper spray in immediate response to their protected speech—to the contrary, they were lauded for it, and always are. *E.g.*, Ex. 6; Ex. 1 to ECF No. 64 (Lt. Lipp characterizes police behavior as "successful;"

recommends presence of increased surveillance, plus helicopters, horses, and sound canon at next political protest.) Without addressing the reams of evidence uncovered in this case, Defendants summarily declare that "Plaintiffs have no [] evidence of a history of abuse" by the Department, and therefore cannot prove their claims. *Id.*

Defendants' breezy neglect of the evidence must not be tolerated. The fact record easily supports a finding that the Department's pattern, practice, and custom of ratifying and promoting the unconstitutional use of pepper spray against political demonstrators motivated the misconduct here. The Department repeatedly punishes people in the same way it punished Plaintiffs:

- *614 Equality March*

On October 23, 2016, nonviolent demonstrators gathered between Goodale Park, the Ohio Statehouse, and the Franklin County Courthouse to peacefully protest police brutality. A small group gathered in the intersection of High and Mound and knelt together, and police began striking them with hands, bicycles, and mounted horses. As the demonstrators tried to help each other back onto the sidewalks, a Columbus police officer pushed, then pepper-sprayed three demonstrators at close range and in the face. Ex. 7 (Incident Report to Police Chief, approving use of pepper spray, recommending increased pushing of horses against protestors in the future). The gratuitous use of pepper spray on nonviolent individuals—in addition to other intrusive force—was reported and all uses of force from the event were approved by Department command. [7] *Id.*

- *Columbus Pride Parade*

On June 17, 2017, during the Columbus Pride Parade, several peaceful protestors who were not involved in the Parade entered the road and stood silently near the paraders. Their intent was to briefly pause the parade to honor the life of Philando Castile. Less than 30 seconds after they

---

[7] Defendants did not produce close police video evidence of this event because they did not maintain it at the time, so body camera-type footage similar to that from the more recent events is not in the record.

entered the intersection, a group of Columbus police officers corralled them with their bicycles and physically detained them. Police body camera video shows that, a few seconds after that, another officer sped in towards the already-detained protestors on his bicycle, lifted his mace canister, and pepper sprayed them at close range in the face before tackling one young man to the ground. Vid. Ex. 9. In advance of the event, the Department had provided the officers with high-grade mace canisters and authorized the use of pepper spray against *any* person who entered the parade route. Ex. 8 (Incident Report to Police Chief). After review, the Department approved all of these uses of force. *Id.* As with other instances, police video shows officers celebrating their infliction of pain against protestors, and mocking the victims, including inferior and commanding officers. Vid. Ex. 10 at 0:16 (laughing, "I hope to god they don't have me on [camera] saying 'get on the ground or I'm going to fucking pound you.'"); Vid Ex. 11 at 0:16 ("busted that shit up, somebody came and maced the whole fucking bunch…[the protestors] had a bunch of big mamas [laughing]").

- *#FreeMasonique Demonstration*

On May 4, 2019, nonviolent demonstrators gathered along North High Street in the Short North neighborhood to protest the prosecution of Masonique Saunders (a teenager who was prosecuted for the felony murder of her teenage boyfriend, who was shot and killed by Columbus police). There, Columbus police officer Kyle Erdeljac approached one of the protestors, a woman who was lying on the ground with one arm visibly chained up to a vehicle. Another police officer forcibly held her other arm down while Erdeljac pepper sprayed her in the face. Vid. Ex. 12, 13. Attacking this prone, restrained, and exposed protestor in this way was completely gratuitous—she was incapacitated, unable to run away, disperse, or harm anyone. All she could do was lie there on her back and receive the torture. Erdeljac's use of force report from

17

the demonstration, including video footage of his attack, was approved by the reviewing supervisor and all the way up the chain of command. Ex. 9, 10 (use of force report and command approval). (In his report, Erdeljac claimed that he could not see that the woman was chained to the vehicle. But his personal body camera "saw" and recorded it clearly and distinctly. Vid Ex. 12, 13).

- *The Demonstration at Issue Here*

Each Plaintiff has demonstrated that at the Demonstration that is the subject of this litigation, the Defendant-Officers violated their rights as a result of the Department's custom and practice. Other demonstrators, too, received the same treatment that night. Use of Force Reports that the armed police submitted after the Demonstration indicate multiple other instances where police singled out and followed demonstrators as they dispersed, pepper-spraying them up close and in the eyes. Photographs and citizen complaints corroborate this misconduct, in addition to the Department's review and ratification of the behavior. *E.g.,* Ex. 1 to ECF No. 64; Ex. 6.

For example, individual officers targeted Connor Lefevers, a then-high school student who stood at the front of the protest group in a colorful scarf, holding up a peace sign. As Connor stood silently with his arms raised, the officers taunted him, repeatedly saying "now would be a good time to leave, you don't look too good." Vid. Ex. 5 at 0:0 and 0:40. They argued over who would get to attack him: "I called him, way before you were up here" "No, me!" "I called him." Vid Ex. 6 at 0:04.When Lt. Lipp ordered the officers to douse the group, one officer said, "I can get him in the face!" Vid. Ex. 7 at 0:27. Defendant Aaron McDonald brought his arm down, pointed it at Connor, and intentionally sprayed him in the eyes for several seconds before he resumed spraying above the rest of the group. *Id.* at 0:46. The officers then shoved Connor to the sidewalk as he

18

stumbled and gasped for air, and left him. *Id.* at 0:55. This incident, like the others, was reviewed and approved by the Department. *See* Ex. 11 (use of force reports for all Officer-Defendants).

Because of this pattern of abuse, when people in Columbus wish to exercise their First Amendment rights to demonstrate, they are risking almost certain physical abuse by the police. Declaration of Kevin Truitt. As this Circuit has warned: "There is scarcely a more powerful form of expression than the political march… [i]t is intended to provoke emotive and spontaneous action, and this is where its virtue lies." *American-Arab Anti-Discrimination Committee v. Dearborn,* 418 F.3d 600, 611-12 (2005). The use of force to suppress political demonstrations "chills a substantial amount of speech related to current events. Yet speech related to current events is the type of speech which is 'situated at the core of our First Amendment values.'" *Id.* (citing *Johnson,* 491 U.S. at 411). The Columbus Police culture violates the constitution in multiple ways: "[w]hat value would the First Amendment carry if its demonstrators could be dispersed or intimidated by police brutality or unnecessary force?" *Lamb v. Decatur,* 247 F. Supp. 1261, 1264-5 (C.D. Ill. 1996); *see also Jones v. Parmley,* 465 F.3d 46, 56-58, 63 (2d Cir. 2001) (Sotomayor, J.) The officers' treatment of Plaintiffs and other demonstrators that night was one instance motivated by the Department's ongoing culture and practice of abuse—one that violates the Fourth Amendment prohibition on excessive force and which chills protest speech in violation of the First.

Taking Defendants' cursory *Monell* briefing one page at a time: First, Plaintiffs have adduced evidence to prove the underlying constitutional violations by the individual officers. *See supra, see* ECF No. 63 at PAGEID# 375. Second, Plaintiffs will demonstrate that the "moving force" behind these violations was the Department's unlawful custom and repeated ratification of

the officers' acts. *See supra, see* ECF No. 63, PAGEID# 376.[8] Third, Plaintiffs will show that, among other things, the Department's failure to supervise and discipline its officers and its repeated instances of similar misconduct are evidence of this unlawful pattern. *See supra, see* ECF No. 63, PAGEID# 377-378. Defendants have not met their burden to move for summary judgment themselves by demonstrating that the material facts are undisputed, but Plaintiffs have provided more than sufficient evidence for a reasonable jury to find in their favor on all claims. *See Guglielmo v. Montgomery Cty.*, Ohio, No. 3:17-CV-6, 2019 WL 2270447, *22-23 (S.D. Ohio May 28, 2019). Defendants cannot defeat Plaintiffs' *Monell* claims at summary judgment.

## CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that this Court deny Defendants' Motion for Summary Judgment.

August 2, 2019

David Carey (0088787)
ACLU of Ohio Foundation
1108 City Park Avenue
Suite 203
Columbus, OH 43206
Phone: 614-586-1969
Fax: 614-586-1974
dcarey@acluohio.org

Respectfully submitted,

/s/ *Freda J. Levenson*
Freda J. Levenson (0045916)
Elizabeth Bonham (0093733)
ACLU of Ohio Foundation, Inc.
4506 Chester Avenue
Cleveland, Ohio 44103
Tel: (216) 472-2220
Fax: (216) 472-2210
ebonham@acluohio.org
flevenson@acluohio.org

---

[8] To the extent that Defendants argue "[t]he doctrine of respondeat superior liability is inapplicable in §1983 actions," ECF No. 63, PAGEID# 376, they may be conflating the appropriate theories of liability for the City and Department, on one hand, and for Lieutenant Lipp, on the other hand. Lt. Lipp has supervisory liability for the conduct of Officers Masters and Thiel. The City and the Department have *Monell* liability for their pattern, practice, and custom of using and ratifying unconstitutional conduct. In other words, the City and the Department are liable *directly*, not by way of respondeat superior.

20

## CERTIIFICATE OF SERVICE

I certify that on August 2, 2019 I filed the foregoing using the Court's ECF system and that a copy was served on all current parties using that system. I further certify that I filed four video exhibits to this Motion by personal delivery to the Clerk of Court because the ECF system could not accommodate them, and that these will be available to all parties through the Court's docket and served by U.S. mail on counsel for Defendants.

/s/ *Freda J. Levenson*
Freda J. Levenson (0045916)